UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH PEPE III | CIVIL ACTION |
| VERSUS | NO. 24-1343 |
| NEW YORK LIFE INSURANCE COMPANY | SECTION "R" (5) |

## ORDER AND REASONS

Before the Court is defendant New York Life Insurance Company's ("New York Life") unopposed motion to dismiss plaintiff's complaint, or, in the alternative, to stay and compel arbitration.[1] For the following reasons, the Court grants defendant's motion to stay and compel arbitration.

## I. BACKGROUND

In 2022, plaintiff Joseph Pepe III brought three *pro se* actions in Louisiana state court against his former employer, New York Life, and two former coworkers, alleging that New York Life and its employees retaliated against plaintiff after he raised concerns about illegal actions at New York

---

[1] *See Pepe v. New York Life Ins. Co.*, No. 22-4005, R. Doc. 1-1*; Pepe v. Gill*, No. 22-4012, R. Doc. 1-1; *Pepe v. Bowers*, No. 22-4015*, R. Doc. 1-1.

Life.[2]  Plaintiff further alleged that New York Life engaged in covert monitoring and recording of employees, covered up harassment, threats, and extortion, and filed a false fraud report with the Louisiana Insurance Department.  New York Life removed the three cases to this Court.[3]  It also moved to consolidate the actions, to compel arbitration, and to stay the proceedings.[4]  On February 7, 2023, the Court granted New York Life's motions.[5]  In deciding to compel arbitration and stay proceedings, the Court concluded that there is a valid agreement to arbitrate and "clear and unmistakable evidence" that the parties intended to arbitrate the issue of arbitrability.[6]

Despite the Court's order compelling arbitration, plaintiff failed to begin arbitration proceedings against New York Life.  Instead, on April 5, 2023, plaintiff filed an action in state court against New York Life on nearly identical grounds, alleging in part that he was retaliated against for being a

---

[2] *See Pepe v. New York Life Ins. Co.*, No. 22-4005, R. Doc. 1-1*; Pepe v. Gill*, No. 22-4012, R. Doc. 1-1; *Pepe v. Bowers*, No. 22-4015, R. Doc. 1-1.

[3] *See Pepe v. New York Life Ins. Co.*, No. 22-4005, R. Doc. 1*; Pepe v. Gill*, No. 22-4012, R. Doc. 1; *Pepe v. Bowers*, No. 22-4015, R. Doc. 1.

[4] *See Pepe v. New York Life Ins. Co.*, No. 22-4005, R. Doc. 9*; Pepe v. Gill*, No. 22-4012, R. Doc. 11; *Pepe v. Bowers*, No. 22-4015, R. Doc. 10.

[5] *See Pepe v. New York Life Ins. Co.*, No. 22-4005, R. Doc. 20*; Pepe v. Gill*, No. 22-4012, R. Doc. 15; *Pepe v. Bowers*, No. 22-4015, R. Doc. 13.

[6] *See Pepe v. New York Life Ins. Co.*, No. 22-4005, R. Doc. 20*; Pepe v. Gill*, No. 22-4012, R. Doc. 15; *Pepe v. Bowers*, No. 22-4015, R. Doc. 13.

whistleblower.[7] New York Life promptly removed the action[8] and filed an unopposed motion to dismiss, or, alternatively, to compel arbitration.[9] At the recommendation of Chief Magistrate Judge Michael North,[10] the Court stayed and administratively closed the matter pending resolution of any arbitration proceeding.[11]

On April 3, 2024, less than four months after the stay of his fourth claim, plaintiff filed the present action in state court against New York Life, now alleging FMLA and ADA violations in retaliation for his "reporting criminal activity, illegal survellance [sic], Impersonation Louisiana Goverment [sic] Officials."[12] This filing constitutes plaintiff's fifth action against New York Life in roughly eighteen months largely consisting of the same allegations. New York Life removed the case to this Court,[13] and now brings the instant motion to dismiss, or, in the alternative, stay and compel arbitration.[14]

---

[7] *Pepe v. New York Life Ins. Co.*, No. 23-1435, R. Doc. 1-3.
[8] *Id.*, R. Doc. 1.
[9] *Id.*, R. Doc. 8.
[10] *Id.*, R. Doc. 13.
[11] *Id.*, R. Doc. 14.
[12] R. Doc. 2-2 ¶ 10.
[13] R. Doc. 2.
[14] R. Doc. 8.

3

## II. LAW AND ANALYSIS

New York Life first asks the Court to dismiss this action because plaintiff failed to comply with the Court's order to proceed to arbitration on his earlier claims. Although the Court is not "barred from dismissing" a suit "subject to arbitration" if there is an "unrelated" and "separate" reason to dismiss, such as a lack of jurisdiction, Section 3 of the Federal Arbitration Act "overrides any discretion [the Court] might otherwise have had to dismiss a suit when the parties have agreed to arbitration." *Smith v. Spizzirri*, 144 S. Ct. 1173, 1178 (2024). Therefore, the Court denies the motion to dismiss and proceeds to New York Life's motion to compel arbitration.

The Federal Arbitration Act, 9 U.S.C. §§ 1-16, expresses a strong federal policy in favor of enforcing arbitration agreements. See *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-18 (1985); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Safer v. Nelson Fin. Group, Inc.*, 422 F.3d 289, 294 (5th Cir. 2005). Section 3 of the Act provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such

4

>arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The Supreme Court has explained that the Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218. Moreover, "any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration." *Safer*, 422 F.3d at 294.

To determine whether to compel the parties to arbitrate, the Court must complete a two-step inquiry. *Id.* at 293. First, the Court must determine whether the parties agreed to arbitrate the disputes in question. *Id.* This determination ordinarily involves two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* But when the parties' agreement contains a delegation clause, the Court simply analyzes whether there is a valid agreement, and if so, whether there is "clear and unmistakable evidence" that the parties intended to arbitrate the arbitrability issue. *See Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019). Second, if the Court determines that the

5

parties have agreed to arbitrate the dispute in question, it "then must determine 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Safer*, 422 F.3d at 294 (quoting *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996)).

As it has twice before,[15] the Court determines that there is a valid agreement between plaintiff and New York Life to arbitrate and that there is "clear and unmistakable evidence" that the parties intended to arbitrate the issue of arbitrability. *See FloaTEC, L.L.C.*, 921 F.3d at 514. There is a clearly binding agreement to arbitrate. The agreement at issue contains a plain arbitration provision delegating the issue of arbitrability to the arbitrator,[16] and plaintiff raises no legal question as to validity. Second, the Court must determine whether the parties' agreement contains a valid delegation clause. *FloaTEC, L.L.C.*, 921 F.3d at 514 (quoting *IQ Prod. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017)). The parties' agreeement provides that "any dispute as to whether [plaintiff's] Claim is arbitrable . . . shall be resolved by a final and binding arbitration proceeding." Plaintiff presents no argument or evidence contradicting the intent of this provision. There is clear and unmistakable evidence that the parties intended to arbitrate the issue of

---

[15]    *Pepe v. New York Life Ins. Co.*, No. 23-1435, R. Doc. 14; *Pepe v. New York Life Ins. Co.*, No. 22-4005, R. Doc. 20.

[16]    R. Doc. 8-4 § 6.

6

arbitrability. Because the Agreement "delegates the arbitrability question to an arbitrator, [the Court] may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

Lastly, the Court must consider whether legal constraints external to the parties' agreement foreclose the arbitration of those claims. This includes "whether any federal statute or policy renders the claims non-arbitrable." *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007) (citations omitted). Plaintiff fails to provide any federal or state law that would preclude enforcement of the arbitration agreement. Accordingly, under the FAA, the Court must grant New York Life's motion to stay and compel arbitration, and administratively closes the case pending a final decision of the arbitrator or panel.

## III. CONCLUSION

Accordingly, the Court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss or, alternatively, to compel arbitration. The Court GRANTS defendant's motion to compel arbitration and to stay the proceedings pending arbitration. Accordingly, this matter is stayed and administratively closed pending resolution of any arbitration proceeding. The Court DENIES defendant's motion to dismiss the complaint. This matter is stayed and administratively closed pending resolution of any arbitration proceeding.

New Orleans, Louisiana, this __11th__ day of July, 2024.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE